IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 17-cv-00776-MSK-NYW

LOUIS PEOPLES, JR.,

    Plaintiff,

v.

BAKER,
NEWCOMB, and
SIMPSON,

    Defendants.
_____

## OPINION AND ORDER
_____

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion for Summary Judgment **(# 69)**, Mr. Peoples' *pro se*[1] response **(# 74, 81**[2]**)**, and the Defendants' reply **(# 77)**.

## FACTS

The Court summarizes the pertinent facts here and elaborates as necessary in its analysis. Mr. Peoples is an inmate in the Colorado Department of Corrections, housed in the Sterling

---

[1] Given Mr. People's *pro se* status, the Court construes his pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

[2] Mr. Peoples timely filed his initial response brief **(# 74)** on August 28, 2018. The Defendants filed their reply brief on September 11, 2018, completing the briefing of the motion. On October 15, 2018, without first obtaining leave of the Court or otherwise showing good cause to permit further filings, Mr. Peoples filed a second response brief **(# 81)** that contained entirely new factual and legal arguments compared to his prior brief. Although the Court could strike the second brief as an impermissible surreply, in an abundance of deference to Mr. Peoples, the Court has considered both briefs.

Correctional Facility ("SCF"). According to the Amended Complaint **(# 6)**, on September 28, 2016, Mr. Peoples was summoned to the SCF law library to assist an inmate in preparing some legal materials. Defendants Baker and Newcomb,[3] SCF Correctional Officers, saw Mr. Peoples in the library and told him he was not supposed to be there. A discussion ensued, and Mr. Peoples was briefly handcuffed while the Defendants and other SCF officials conferred to determine whether he was authorized to be in the law library. Eventually, it was decided that Mr. Peoples would not be allowed to access the library for the purposes of assisting other inmates and that he would be returned to his unit. Before he was returned to his unit, he was required to be searched. Mr. Baker directed Mr. Peoples to a staff bathroom and conducted a strip search, albeit with the bathroom door open and in view of an adjacent classroom. Ms. Newcomb and Mr. Simpson were present for that strip search as well. (Mr. Peoples' appears to allege that, at some point, Mr. Simpson took over the search from Mr. Baker.) Mr. Peoples alleges that Mr. Baker conducted the search with the purposeful intention of having Mr. Peoples exposed to as many other inmates as possible and to prolong and embarrass Mr. Peoples.

Based on these facts, and as narrowed by the Court's Order **(# 7)** Mr. Peoples asserts a single claim under 42 U.S.C. § 1983: violation of his Fourth Amendment right to be free from unreasonable searches, relating to the circumstances of the strip search, asserted against Mr. Baker, as well as against Ms. Newcomb and Simpson, who observed Mr. Baker's unlawful actions and failed to intercede; and (ii) retaliation for the exercise of First Amendment rights, asserted against Mr. Baker and Ms. Newcomb, insofar as Mr. Peoples contends that Mr. Baker's and Ms. Newcomb's actions were taken in retaliation for a prior instance in which Mr. Baker

---

[3] There appear to be discrepancies in how many of the Defendants' names are spelled. In the interests of uniformity, the Court uses the spellings found in Mr. Peoples' caption.

"attempted to get [Mr. Peoples] fired from his job as a programs porter," but "Mr. Peoples' boss realized that [Mr.] Baker was wrong in firing him and she refused to let Baker's adverse action stand."

All three Defendants move **(# 69)** for summary judgment on Mr. Peoples' claims against them, arguing: (i) Mr. Peoples cannot obtain compensatory damages because he did not suffer any physical injury, pursuant to 42 U.S.C. § 1991e(e); (ii) Mr. Peoples does not allege any continuing injury warranting a request for injunctive relief; (iii) Mr. Peoples cannot establish that the strip search constituted a violation of the Fourth Amendment, insofar as such searches are a legitimate exercise of prison security concerns regarding inmates' possession and movement of contraband and that the circumstances under which the search were conducted were reasonable; (iv) Mr. Peoples cannot establish that Ms. Newcomb participated in the search, insofar as he admits that she was standing outside the bathroom with her back turned during the search; and (v) to the extent that any of the Defendants engaged in a constitutional violation, the contours of such violation were not clearly established, entitling the Defendants to qualified immunity. Notably, the Defendants' motion does not address Mr. Peoples' retaliation claim; in their reply brief, the Defendants assert a belief that "the only claims remaining are those asserted pursuant to the Fourth Amendment."

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs

what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent

evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B. Fourth Amendment claim**

Inmates possess a somewhat abridged Fourth Amendment right to avoid unreasonable searches, but it is well-settled that "a strip search is an invasion of personal rights of the first magnitude." *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002). Inmates have a "well-established right . . . not to be subjected to a humiliating strip search in full view of several (or perhaps many) others unless the procedure is reasonably related to a legitimate penological interest." *Id.* The inquiry into whether a given search is reasonable depends on a variety of factors, including the scope of the intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

Most of the facts that led up to the search of Mr. Peoples are not particularly relevant to the discussion herein; it is sufficient to note that Sgt. Larson, an SCF official, concluded that Mr. Peoples was not in a location where he was supposed to be and instructed Mr. Baker to conduct a strip search of Mr. Peoples before returning him to his housing unit. Sgt. Larson's affidavit recites various reasons why inmates who are found out of place, particularly those near areas with books and computers in them, are considered to be security risks. Inmates have been known to fashion contraband from computer parts and store contraband items in books or other locations outside their cells, and inmates who are found outside their assigned locations can be suspected of being "mules" carrying contraband or information on behalf of other inmates.

Sgt. Larson's affidavit also explains why SCF staff chose to search Mr. Peoples in the staff bathroom, rather than an offender bathroom nearby. The staff bathroom is directly across the hallway from a classroom, and, admittedly, inmates who were present in the classroom could

see some portion of the way into the staff bathroom through a chest-high classroom window, particularly if they stood up. On the other hand, Sgt. Larson notes that the offender bathroom has "very good visibility in from the hallway and it would be very difficult to provide the type of privacy that was afforded by the staff bathroom." Sgt. Larson further notes that the offender bathroom has been known to have impermissible materials hidden therein, posing an additional security threat that was not present in the staff bathroom.

As to how the search was conducted, the Defendants' various affidavits generally agree as to the personnel configuration: Mr. Peoples stood inside the bathroom and was physically searched by Mr. Simpson. Mr. Baker stood in the doorway of the bathroom, intending to partially obstruct any view into the bathroom from the outside, and searched Mr. Peoples' articles of clothing as Mr. Simpson passed them out. Sgt. Larson stood off to one side of the bathroom door, facing away from it (towards the classroom window), so as to "prevent[ ] movement through the hallway"; Ms. Newcomb stood in a similar position on the other side of the door. The Defendants state that the bathroom door was left open during the search as a safety protocol; as Captain Tidwell's affidavit explains, "staff are trained to keep the door of a room open so an offender cannot corner the officer and close the door if an altercation happens." All the Defendants agree that the search was completed in approximately three minutes.

Mr. Peoples disputes some of these facts.[4] He disputes that the search lasted only three minutes, but does not provide his own estimation of how long it took. He disputes that Mr. Simpson was the only staffer who conducted the physical search, insisting that Mr. Baker "was

---

[4] Mr. Peoples did not submit evidence in the form of an affidavit or declaration, but the Court assumes that, if called upon, he would reduce the factual assertions made in his response brief to such a form. Thus, the Court will treat factual assertions made in Mr. Peoples' brief as if they were submitted in an evidentiary form.

the primary searcher," and that Mr. Simpson interceded after words were exchanged between Mr. Peoples and Mr. Baker, such that Mr. Simpson began a "second search" that was "done without incident." Mr. Peoples appears to concede that Mr. Baker and Mr. Simpson were "standing in the door . . . blocking view" into the bathroom, but asserts that he was still in "plain view" of inmates who were watching from the classroom. Although the Defendants did not describe the details of the search, Mr. Peoples notes that the search involved removing his clothes, "bending over and spreading the cheeks of his buttocks to reveal his anus, squatting and coughing to push the anus out, and fondling the penis and scrotum for them to scrutinize minutely." He alleges that "other inmates across the hall watched." He contends that Ms. Newcomb "was standing in a position to observe the ongoing strip search and [he] could see her, and she could see his body," until he complained and Mr. Baker and Mr. Simpson requested that Ms. Newcomb move out of view.

Even resolving all disputes in Mr. Peoples' favor, the Court cannot conclude that the facts here demonstrate that the strip search of Mr. Peoples was unreasonable. The Court begins with the purpose of the search. Although Mr. Peoples hotly debates the question of whether he was properly in the law library prior to the event, the record reflects that Sgt. Larson – who is no longer a defendant in this action – determined that he was not and that it was Sgt. Larson who instructed that a strip search take place. Whether Sgt. Larson's decision was correct or not does not bear on the culpability of the remaining Defendants. Rather, the remaining Defendants were instructed to perform a strip search on an inmate who had been determined by another staff member to be outside his assigned area. Mr. Peoples has not disputed the general proposition that inmates found outside their assigned areas are properly considered to be possible carriers of contraband and that strip searches of such inmates are routine. Thus, the undisputed reason for

the search here weighs in favor of a finding that it was reasonable.

Next, the Court considers the place where the search was conducted. There is no dispute that the staff bathroom, where the search was conducted, is near the law library where Mr. Peoples was first encountered by the Defendants on the date in question. Put differently, this is not a situation where the Defendants had an opportune location for a search available nearby, but chose to transport Mr. Peoples a significant distance to a less-appropriate location before beginning the search. The Defendants have also articulated a valid reason for choosing the staff bathroom: it is a location relatively free of contraband. To be fair, the staff bathroom did have the disadvantage of its doorway being visible from the classroom across the hall, but notably, Mr. Peoples has not suggested that another, equally-convenient location nearby presented similar benefits but with less visibility.[5]

The crux of Mr. Peoples' complaint appears to be that the Defendants did not use a "privacy screen" to prevent undue exposure, as is ostensibly required by the Colorado Department of Corrections' Administrative Regulation 300-06. Subsection IV(D)(4) of that regulation addresses the issue of privacy during a strip search. Mr. Peoples seizes on subsection (c), which provides that "[strip] searches conducted in a common area shall be performed behind a privacy screen or barrier whether one offender is searched or multiple offenders are searched." Although it is undisputed that the Defendants did not use a privacy screen when searching Mr. Peoples, there is the unanswered question of whether the staff bathroom constitutes a "common area" for purposes of this regulation. The regulation does not define the term "common area," but a reasonable construction of that term might be a place where multiple inmates might

---

[5] Sgt. Larson's affidavit indicates that, at some point in time, Mr. Peoples may have suggested that an offender bathroom was an appropriate alternative, but it does not appear that Mr. Peoples has made such an argument in the briefing herein.

congregate together, a definition that certainly excludes a staff bathroom. Certainly, Mr. Peoples might contend that a search in a bathroom with a door open to a hallway, visible to inmates in a classroom across the hall, is the equivalent to a search in the hallway itself and thus a "common area."

But even assuming that he is correct, and even assuming that the Administrative Regulation required the Defendants to use a privacy screen, the violation of an Administrative Regulation does not automatically amount to a violation of the Constitution. Regulations are designed to guide officers in the operation of prisons, not to confer rights on inmates. Therefore, the violation of a regulation does not necessarily become a constitutional deprivation. *Sandin v. Conner,* 515 U.S. 472, 481-82 (1995); *Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir. 2004). The absence of a privacy screen is certainly a factor that weighs against the reasonableness of the search of Mr. Peoples. But that weight is offset somewhat by the undisputed fact that both Mr. Simpson and Mr. Baker, standing in the doorway of the bathroom – and Mr. Peoples does not dispute that the men stood there -- operated to obscure some portion of the view of Mr. Peoples just as a screen might.

Notably, Mr. Peoples has not come forward with any witness who observed the search as it occurred. Mr. Peoples cannot say with certainty what people in the classroom may have been able to see because Mr. Peoples was not in the classroom. The mere fact that Mr. Peoples might have been able to see into the classroom during the search does not necessarily mean that people in the classroom were similarly able to see him. Mr. Peoples contends that even Ms. Newcomb turned around and faced away from him when he requested that she do so during the search. Thus, Mr. Peoples offers nothing but his own speculation that <u>anyone</u> other than Mr. Simpson and Mr. Baker saw him naked during the search.

Finally, the Court briefly considers the scope and intrusiveness of the search. Taking Mr. Peoples' assertions as true – that he was forced to spread his buttocks and expose his anus, squat, and cough as part of the search – the Court cannot conclude that such actions were particularly humiliating or intrusive. Indeed, section IV(D)(5)(h) and (*i*) of Regulation 300-06 makes clear that such movements are a regular part of every strip search. Mr. Peoples also seems to assert that two searches were conducted – one by Mr. Baker that was not completed and a second one, begun immediately thereafter by Mr. Simpson and which was resolved without incident. Although that does present an unusual situation, Mr. Peoples' own version of events indicates that the second search was required because Mr. Peoples and Mr. Baker were exchanging heated words during Mr. Baker's attempt to complete the search. Far from suggesting an unreasonable search, the intercession of a less antagonistic staff member to complete a search that has already begun suggests that the Defendants properly exercised restraint.

The Court cannot say that the facts, even in the light described by Mr. Baker, reflect a search that could be considered "unreasonable" under the Fourth Amendment. The undisputed record reflects that the search was conducted in the closest location that offered a modicum of privacy to Mr. Peoples, and that the Defendants undertook reasonable (if not necessarily perfect) steps to ensure his privacy during the search. Given the security justifications underlying the search, the Court cannot conclude that the manner in which the search was conducted would permit a factfinder to conclude that it was unreasonable, particularly in the absence of any witness who saw Mr. Peoples in a state of undress. Accordingly, the Court finds that Mr. Peoples has failed to demonstrate a triable issue of fact as to whether his Fourth Amendment rights were violated and the Defendants are entitled to summary judgment on the Fourth Amendment claims against them.

### C. Whether a retaliation claim is extant

One matter remains: Mr. Peoples' Amended Complaint, and a considerable portion of his summary judgment briefing, addresses a claim that the Defendants retaliated against him for his having exercised his First Amendment rights. The Defendants have not sought summary judgment on that claim, but have indicated that they believe that no such claim remains. Thus, the Court attempts to clear up that confusion.

On May 11, 2017, the Court issued an Order to Dismiss In Part and to Draw In Part **(# 7)**. That Order directed that Mr. Peoples' Fourth Amendment claims be drawn to a presiding judge. It directed that a set of claims in which Mr. Peoples' alleged that his expulsion from the law library abridged "a First Amendment right to assist other inmates with their legal issues" be dismissed. It noted that inmates "do[ ] not have a constitutional right to assist other inmates with their legal issues," and further rejected any argument that such a right can be found within the "freedom of association" aspect of the First Amendment because "the basis for the association is to be able to assist inmates with their legal issues." Next, the Order reads: "Furthermore, if the denial of association is asserted as retaliation, the claim is not viable when the underlying activity is an inmate's legal assistance to other inmates. *See Baughman v. Saffle*, 24 Fed.Appx. 845, 849 (10th Cir. 2001)."

The Court reads Mr. Peoples' Amended Complaint slightly more broadly than did Senior Judge Babcock. Mr. Peoples' Amended Complaint reads, in pertinent part:

> 10. Defendant Baker than confronted Plaintiff and said "That was why you were fired a year ago." What Defendant Baker was referring to was an ordeal the year prior when Baker attempted to get the Plaintiff fired from his job as a programs porter. The end result was that the Plaintiff's boss realized Defend[ant] Baker was wrong in firing him, and she refused to let Baker's adverse action stand; she rehired the Plaintiff to remedy the wrong.

> 11. Plaintiff informed Defendant Baker that this was false and that Baker was retaliated against him because he was sore about not getting his way the year before, and because he was trying to help other inmates with their legal work.
>
> . . .
>
> 39. Defendant Baker's actions were retaliatory because they were taken in response to the Plaintiff attempting to exercise his constitutionally protected rights . . . Had the Plaintiff not been trying to exercise his rights of association and speech he would not have been subjected to Baker's unreasonable strip search.

A close reading of Mr. Peoples' allegations reveals the following: (i) about a year prior to the incident in question, Mr. Baker fired Mr. Peoples from his job as a "programs porter" for undisclosed reasons; (ii) Mr. Peoples complained to his "boss" and the termination was rescinded; (iii) when Mr. Baker confronted Mr. Peoples in September 2016, he retaliated against Mr. Peoples for two reasons – because Mr. Peoples "was trying to help other inmates with their legal work" and because "he was sore" about the incident the year before. Judge Babcock's dismissal order appropriately resolves Mr. Peoples' retaliation claim to the extent Mr. Peoples claims that such retaliation was based on Mr. Peoples helping other inmates with their legal work. As *Baughman* makes clear, because helping other inmates is not a constitutionally-protected activity, a prison officer can permissibly take adverse actions against the inmate because of such conduct.

But Mr. Peoples' Amended Complaint also contemplates a second basis for retaliation: that Mr. Baker was angry that Mr. Peoples had foiled Mr. Baker's attempt to have him fired in 2015 and used the law library incident to retaliate. *Baughman* does not address such circumstances, and thus, would not have permitted summary dismissal of a retaliation claim premised upon these facts. Nor does it appear that Judge Babcock addressed this alternative formulation of Mr. Peoples' retaliation claim; indeed, Judge Babcock's Order refers, on several

occasions, to Mr. Peoples' "First Amendment claims regarding association and legal assistance," without ever mentioning his "First Amendment claims regarding retaliation for opposing his termination."

The Court does not necessarily conclude that Mr. Peoples' retaliation claim premised upon Mr. Baker's prior attempt to have him fired was appropriate for summary dismissal at the time Judge Babcock ruled. *See generally Zarska v. Higgins*, 171 Fed.Appx. 255, 258-59 (10th Cir. 2006). But the complexion of that claim changes in light of the rulings above on Mr. Peoples' Fourth Amendment claim.

Having determined that the Defendants' search of Mr. Peoples was not unreasonable as a matter of law, Mr. Peoples' retaliation claim is thrown into some relief. An inmate asserting a First Amendment retaliation claim must show that: (i) he engaged in an activity protected by the First Amendment; (ii) the defendants caused him to suffer an action that would chill a person of ordinary firmness from continuing to engage in that activity; and (iii) that the defendant's action was substantially motivated by the inmate's protected conduct. *Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018). Although being subjected to an unconstitutional and humiliating public search might be sufficient to demonstrate an "action that would chill a person of ordinary firmness from continuing to engage in a protected activity" as required by the second element, being subjected to a constitutional strip search justified by penological concerns does not. Indeed, actions that are simply unprofessional or unpleasant, standing alone, do not satisfy the showing. *Id.* at 1211-12 (collecting cases establishing that insulting comments, name calling, verbal threats, and being fed unappetizing food do not constitute adverse actions). Without the strip search, Mr. Peoples cannot point to any substantial action by Defendants against him. Being told (improperly, perhaps) that he was not allowed to visit the law library or being told to

return to his assigned area are not the type of actions that would support a retaliation claim.

Mr. Peoples' briefing addresses his retaliation claim in considerable depth, and the Court takes his statements as true. He does not suggest that there is any further evidence to be presented. Thus, based on his statements, the Court finds that there are insufficient facts exist to support a retaliation claim. Accordingly, the Court grants summary judgment to the Defendants on the retaliation claim as well.

## **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the Defendants' Motion for Summary Judgment **(# 69)**. The Clerk of the Court shall enter judgment in favor of the Defendants on all claims and shall close this case.

Dated this 13th day of March, 2019.

BY THE COURT:

*Marcia S. Krieger*

Marcia S. Krieger
Senior United States District Judge